IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **TRAM BAR CO-PACKING LLC dba**<br>**THE ORGANIC SNACK COMPANY,**<br><br>  14 Commerce Ct.<br>  Bedford, Pennsylvania 15522,<br><br>         *Plaintiff*,<br><br>     v.<br><br>**ARCBEST CORPORATION,**<br><br>  8401 McClure Drive<br>  Fort Smith, Arkansas 72916,<br><br>         *Defendant*. | Civil Action No.  3:23-cv-86 |

# COMPLAINT

NOW COMES Plaintiff Tram Bar Co-Packing LLC dba The Organic Snack Company ("Organic Snack"), by and through its undersigned counsel, and states as follows:

1. In late August 2022, Organic Snack – whose mission is "[t]o create high quality organic food for a reasonable price, while giving back to the community" – purchased approximately 40,000 pounds of organic almond butter from a supplier in California.

2. Separately, Organic Snack arranged with Defendant ArcBest Corporation ("Defendant" or "ArcBest"), a logistics company, to have the almond butter, which was worth more than $230,000.00, transported by truck from California to Organic Snack's facility in Bedford, Pennsylvania.  ArcBest, which had undertaken the responsibility for ensuring that the shipment of almond butter made it carefully and safely from California to Pennsylvania,

1

unilaterally decided to outsource the transport of the almond butter to a third party. Organic Snack had no input whatsoever into ArcBest's selection (or supervision) of that third party. With respect to the shipment of the almond butter, Organic Snack's commercial arrangement was with ArcBest, and ArcBest only.

3. Upon information and belief, when the almond butter was loaded into – and (ostensibly) secured in – the truck's trailer in California in early September 2022, it was in good condition, *i.e.*, undamaged and uncontaminated. In other words, the almond butter was in commercially appropriate condition, suitable for the purpose for which Organic Snack – which planned to use the almond butter in the commercial production of granola bars – had purchased it.

4. When the truck arrived in Bedford days later, however, the almond butter was found to have been damaged and no longer usable for any purpose. Lids were off, and containers were cracked. Almond butter was coating the floor of the truck's trailer. As a result, there was a "significant contamination risk from foreign objects and bacterial contamination." As such, "[b]ecause of the food safety risks involved from the damage to the containers during transit," Organic Snack had to reject the almond butter. None of the almond butter was salvageable.

5. ArcBest is responsible and liable for the damage to the goods and for Organic Snack's resulting $230,000.00-plus losses. Despite on-going attempts by Organic Snack – which in no way whatsoever contributed to the damage to the almond butter – to resolve this matter, ArcBest has refused to act in good faith, to accept responsibility for the damage(s) and the loss(es), and/or to make Organic Snack whole.

**PARTIES**

6.     Organic Snack is a Pennsylvania limited liability company with its principal place of business located at 14 Commerce Court in Bedford, Pennsylvania.

7.     Upon information and belief ArcBest is a Delaware corporation with its principal place of business in Fort Smith, Arkansas.

**JURISDICTION AND VENUE**

8.     Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332, as the amount in controversy exceeds the sum or value of $75,000 and the dispute is between citizens of different states.  Alternatively, or additionally, jurisdiction is proper in this Court pursuant to 49 U.S.C. § 14706 and 28 U.S.C. § 1331.

9.     Venue is proper in this judicial district because Organic Snack resides in this judicial district and because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.  Alternatively, or additionally, venue is proper in this judicial district because the relevant goods were transported through and into this judicial district and the intended destination of the goods was in this judicial district.

**FACTUAL BACKGROUND**

10.    Founded in 2019, Organic Snack opened its Bedford co-packing facility in March 2020.  Since then, it has helped drive the economy in Bedford County, Pennsylvania.  For example, according to a February 25, 2023 article in *The Tribune Democrat*, "Bedford County's business park has experienced 'phenomenal growth' since The Organic Snack Co. … opened a facility there in 2020, [Bette] Slayton[, president and CEO of the Bedford County Development Association,] said."

11.     Upon information and belief, ArcBest was founded in 1923.  Today, according to its own website, ArcBest "is a multibillion-dollar integrated logistics company."  On its website, ArcBest claims to "create smart supply chain solutions for companies across all industries by leveraging [its] leading-edge technology and growing network of drivers & carriers to move shipments around the world while providing exceptional customer support."  With regards to the "Food and Beverage" industry, ArcBest specifically promises (according to its website) to "[m]aintain the integrity of your food and beverage products with logistics services that offer the speed, safety and visibility you need."

12.     In 2021, according to an ArcBest press release that is available on the company's website, ArcBest, "a leader in supply chain logistics, … announced that it has entered into a definitive agreement to acquire MoLo Solutions, LLC ('MoLo'), a Chicago-based truckload freight brokerage."  According to that press release, "[w]ith the acquisition, ArcBest will become a top 15 U.S. truckload broker with access to over 70,000 carrier partners."

13.     Upon information and belief, since its acquisition, MoLo and its operations have been fully integrated into ArcBest and its operations.  For example, the ArcBest website states: "Our owned assets, combined with MoLo's extensive truckload brokerage network, give you a competitive advantage."  Indeed – according to Judy R. McReynolds, ArcBest chairman, president and CEO, who was quoted in the 2021 press release – ArcBest was "pleased to add MoLo's significant capabilities and talent to our truckload brokerage offering, allowing us to better meet the critical needs of our customers, deliver comprehensive supply chain solutions and accelerate our company's continued growth."  At a minimum, MoLo acts as ArcBest's agent in at least certain circumstances, including the ones at issue here.

14. On or about August 4, 2021, a representative from ArcBest visited Organic Snack's Bedford facility and saw firsthand that Organic Snack was making granola bars at that location.

15. On or about December 29, 2021, Organic Snack's Chief Financial Officer Anthony Lombardo completed an ArcBest Credit Application (the "Credit Application"). At the top of the application, it states, "Thank you for choosing ArcBest as your logistics provider." A true and correct copy of the Credit Application is attached hereto as Exhibit A.

16. Toward the bottom of the Credit Application, it states: "*Customer agrees to ArcBest terms & conditions which are available in their entirety at our website: www.arcb.com*" (emphasis in original).

17. ArcBest never at any time further identified the so-called "terms & conditions" referenced in the Credit Application, and it is far from clear what specific "terms & conditions" were intended to be, or were actually being, referenced.

18. Under "Forms and Documents" on the ArcBest website – and elsewhere on the site – are multiple documents that include the words "terms" and "conditions" in their titles. Upon information and belief, the documents do not appear to be entirely consistent.

19. At least one of those documents – *i.e.*, the Uniform Straight Bill of Lading Terms and Conditions (the "BOL T&C"), which appears on the ArcBest website – provides, in relevant part, that "[t]he carrier shown as transporting the property described in the bill of lading shall be liable as at common law for any loss or damage to the shipment, except as provided herein." Nothing in the BOL T&C provides an exception relevant to the present circumstances.

20. Upon information and belief, Organic Snack's credit application was approved.

21. Organic Snack purchased (approximately) 40,320 pounds of almond butter from Big Tree Organic Farms ("Big Tree") in Turlock, California (the "Almond Butter"). Organic Snack issued a Purchase Order dated August 9, 2022 for this transaction. Big Tree issued an invoice dated August 31, 2022, charging Organic Snack $231,344.00 for the Almond Butter, which was to be used to make granola bars.

22. On or about September 2, 2022, Dakota Taylor, Organic Snack's Logistics Coordinator, sent an e-mail to Sherry Willis, an ArcBest Truckload Account Manager, stating that Organic Snack "would like to book" the shipment of the Almond Butter with ArcBest. A true and correct copy of an e-mail exchange that includes this e-mail is attached hereto as Exhibit B.

23. ArcBest, upon information and belief, was aware that the Almond Butter would be used to make granola bars.

24. Ms. Willis responded via her ArcBest e-mail account on September 2, 2022, stating, in relevant part: "We have a carrier!" A true and correct copy of an e-mail exchange that includes this e-mail is attached hereto as Exhibit B.

25. Attached to Ms. Willis' e-mail was a Bill of Lading ("BOL"). A true and correct copy of the BOL is attached hereto as Exhibit C.

26. According to the BOL, which was issued by ArcBest on MoLo "letterhead," the Almond Butter was to be picked up at Big Tree's facility in California and delivered to Organic Snack's facility in Pennsylvania. Also, according to the BOL, the relevant "Load #" for this transaction was 6000401402 and the relevant "Order(s)" number for this transaction was 4000408064.

6

27. The BOL did *not* incorporate or in any way reference any "tariff(s)" or limitation of liability.

28. At the bottom of the BOL, the "Carrier" was identified as "Rgn Logistics Inc" ("Rgn"). Organic Snack, however, did not enter into any contract or other agreement or arrangement with Rgn. It has never been billed or invoiced by Rgn. It did not select (or participate in any way in the selection of) Rgn as a "carrier."

29. Upon information and belief, ArcBest – and ArcBest alone – decided to engage Rgn to transport the goods from California to Pennsylvania.

30. Organic Snack never agreed to Rgn as the "carrier" or to any limitation on liability (imposed by the carrier or anyone else).

31. ArcBest, upon information and belief, never provided Organic Snack even an opportunity to choose between two or more levels of liability for the relevant shipment.

32. Nor did ArcBest even ever give Organic Snack a reasonable opportunity to accept or reject any limitation of liability (to be imposed by the carrier or anyone else). Organic Snack did not have any, let alone reasonable, notice of any purported limitation of liability. As Mark Thaler, Organic Snack's Chief Executive Officer, wrote to Josh Jenkins, ArcBest Manager, Asset-Light Claims, Safety & Risk, in a November 10, 2022 e-mail: "At no point in this process was there any communication about a 100,000 damage limit." As such, Organic Snack also did not have the opportunity to obtain information necessary to make a deliberate and informed decision about whether to accept any purported limitation of liability.

33. Indeed, albeit referencing Rgn, ArcBest conceded that no limitation of liability applies here. In a December 9, 2022 e-mail to Mr. Thaler, Mr. Jenkins stated that Organic Snack was *not* "preclude[d]" from seeking to recover its entire loss(es). "By no means do you

7

have to … or accept an amount that you do not feel is an acceptable offer to make you whole," Mr. Jenkins assured Mr. Thaler.

34. The goods were picked up on or about September 2, 2022 at Big Tree's facility in California. Upon information and belief, at the time that the Almond Butter was picked up, the lids were on the containers and the containers were intact. Further, upon information and belief, the Almond Butter was *not* damaged and was *not* contaminated at the time of pick-up. To the contrary, it was in good condition.

35. Upon information and belief, (at least) the truck's driver, at a minimum, secured or attempted to secure, the load.

36. The Almond Butter was in fact driven across country from California to Pennsylvania in September 2022.

37. Unfortunately – through no fault of Organic Snack – the Almond Butter was damaged and/or contaminated during transit and before arriving at its intended final destination. As William P. Hartsock, Organic Snack's Quality Assurance Director, explained in a letter – which was provided to ArcBest in mid-October 2022 – when the shipment arrived in Pennsylvania on or about September 6, 2022, the Almond Butter was "found to have shifted dramatically during transit with the entire shipment falling over and being crushed." The lids on the almond-butter containers had come off, and the containers holding the Almond Butter had cracked. There was a thick layer of almond butter coating the floor of the trailer.

38. As a result, as Mr. Hartsock explained, there was a "significant contamination risk from foreign objects and bacterial contamination[,]" including, but not limited to, "an allergen cross contamination risk if [the Almond Butter was] brought into [Organic Snack's] facility." There was no commercially reasonable way of unloading the Almond Butter from the trailer

without contaminating Organic Snack's equipment used inside and outside of its Bedford facility. "Because of the food safety risks involved from the damage to the containers during the transit" as Mr. Hartsock wrote, the Almond Butter "had to be rejected." None of it was salvageable.

39. Organic Snack did in fact reject the entire shipment. At or about the time of the delivery on or about September 6, Mr. Taylor called Ms. Willis to let ArcBest know that Organic Snack was rejecting the damaged/contaminated shipment/goods.

40. Nevertheless, upon information and belief, Big Tree is insisting on payment in full for the Almond Butter.

41. On or about September 14, 2022, Organic Snack formally filed a claim (relating to the damaged/contaminated Almond Butter) with ArcBest through its online portal, which is accessible at https://arcb.com/tools/claims.html\.

42. Apparently, as memorialized in various e-mail from Mr. Jenkins and/or ArcBest Cargo Claim Notification, this claim was assigned "ProNumber 434352315" and/or "claim" number 8673610.

43. To be able to still make the granola bars that were to be made with the damaged/contaminated Almond Butter, Organic Snack had to purchase substitute almond butter to replace the Almond Butter that ArcBest had damaged/contaminated. Organic Snack was able to purchase much of that replacement almond butter from Big Tree at the same price that Organic Snack had paid for the original Almond Butter. However, Organic Snack did have to pay an additional $8,272.00 to have that replacement almond butter shipped to its Bedford facility. But for the damage to the original goods, Organic Snack would not have had to pay this additional freight cost.

44. Organic Snack also had to purchase an additional (approximately) 10,080 pounds of replacement almond butter from a different vendor, which charged $1.05 per pound more for almond butter than Big Tree had charged Organic Snack. As such, the total increase in cost for this additional replacement almond butter was $10,584.00. But for the damage to the original goods, Organic Snack would not have had to pay this additional cost. Additionally, Organic Snack had to pay an additional $555.00 to have this additional replacement almond butter shipped to its Bedford facility. But for the damage to the original goods, Organic Snack would not have had to pay this additional freight cost either.

45. Despite repeated attempts by Organic Snack to resolve this matter, the claim remains unresolved.

46. In an October 27, 2022 e-mail, Mr. Jenkins told Mr. Lombardo: "My expectation is that the claim will be resolved shortly. ***There is clear liability***" (emphasis added). Despite assurances that at least some payment would be made by "the carrier" and/or insurance company, Organic Snack still has received no payment(s) for any of its loss(es).

47. ArcBest has refused to act in good faith, has refused to accept responsibility for the damage(s) and the loss(es), and has not yet paid Organic Snack any amount for the damaged goods and/or any other loss(es). Instead, ArcBest has disingenuously sought to push off its responsibility onto another party(ies).

48. ArcBest did, however, provide Organic Snack an invoice (dated September 20, 2022) (the "Invoice"), charging $6,250.00 for the transportation of the Almond Butter. Not only was that invoice on ArcBest "letterhead," it directed the payor to "Remit Payment To: ArcBest." It also stated: "Thank you for choosing ArcBest™." Additionally, at the very bottom of the Invoice, the word "ArcBest" appears alongside, upon information and belief,

10

ArcBest's "FED TAX ID#." In contrast, nowhere on the Invoice did the term "Rgn" (or anything similar) appear. Nor was there even any indication or suggestion on the Invoice that any entity other than ArcBest was responsible for or involved in any way with the shipment of Organic Snack's goods. A true and correct copy of the Invoice is attached hereto as Exhibit D. ArcBest did ultimately tell Organic Snack "not [to] pay this invoice" and to "disregard" it.

<b><u>COUNT I – BREACH OF CONTRACT</u></b>

49. Paragraphs 1-48 above are incorporated herein by reference.

50. Through, at a minimum, the Credit Application, the BOL, the parties' course of conduct and dealing, usage of trade, the exchange of e-mail, the Invoice, performance, course of performance, and/or implication, Organic Snack and Defendant entered into a contract for the shipment of the Almond Butter from California to Pennsylvania. The parties reached a mutual agreement. Consideration was agreed upon. The essential terms of their agreement were definite and clear. In exchange for payment of more than $6.000, Defendant agreed, *inter alia*, to (i) arrange for the specified goods to be carefully transported to Pennsylvania and safely delivered in usable condition to Organic Snack in Bedford, and (ii) to "[m]aintain the integrity of" the Almond Butter during shipment/transportation. This agreement did ***not*** include any limitation of liability.

51. In addition, as part of this agreement (like any agreement), Defendant was and is still obligated to act in good faith. In other words, it was and is still obligated to, *inter alia*, observe reasonable commercial standards of fair dealing.

52. Defendant breached this agreement and the contractual duties it imposed by, *inter alia*, failing to have the Almond Butter carefully transported from California to Pennsylvania and delivered safely – and in the condition it was purchased – to Organic Snack, as well as by

failing to maintain the integrity of the Almond Butter and failing to deal fairly with Organic Snack.

53. As a result of Defendant's breach(es), Organic Snack has suffered damages in an amount at least equal to the value of the damaged/contaminated Almond Butter plus the additional amount Organic Snack spent replacing the almond butter.

## COUNT II – NEGLIGENCE

54. Paragraphs 1-48 above are incorporated herein by reference.

55. Additionally, or alternatively, Defendant owed Organic Snack certain duties (which were imposed by, *inter alia*, law and not by contract).

56. For one, to the extent that, before or after entering into an agreement/arrangement with Organic Snack (or any shipper), Defendant, separately and independently, on its own decided/decides to engage a third party to transport certain goods, Defendant is responsible for vetting and/or approving that third party, as well as supervising that third party.

57. In purportedly vetting and then approving/selecting any third party, including, but not limited to, the third party to which it outsourced the transportation of the relevant goods from California to Pennsylvania, Defendant owed Organic Snack a duty of care. Specifically, Defendant had a duty to exercise a degree of care that a reasonably careful person would exercise under a similar circumstance.

58. Defendant breached its duty, upon information and belief, by among other acts and omissions, failing to adequately vet Rgn, approving/selecting Rgn, failing to adequately supervise Rgn, and failing to select an appropriate, commercially reasonable third party that would secure the Almond Butter, carefully and safely transport the Almond Butter, maintain the

integrity of the Almond Butter, and deliver the Almond Butter in the same condition in which it was loaded onto the trailer.

59. Additionally, or alternatively, in transporting the Almond Butter, Defendant, a sophisticated, multi-billion-dollar company, assumed and owed Organic Snack a duty of care. Specifically, again, Defendant had a duty to exercise a degree of care that a reasonably careful person would exercise under a similar circumstance.

60. Defendant breached this duty by, among other acts and omissions, failing to secure the Almond Butter, failing to carefully and safely transport the Almond Butter, failing to maintain the integrity of the Almond Butter, and failing to deliver the Almond Butter in the same condition in which it was loaded onto the truck.

61. The damage to and/or contamination of the Almond Butter, such as that that occurred here, ordinarily does not occur in the absence of negligence.

62. Defendant's breach of the duty(ies) owed to Organic Snack – and its acts and omissions – injured Organic Snack. For example, its breach(es), its acts, and its omissions rendered the Almond Butter unable to be used for its intended purpose, *i.e.*, making granola bars.

63. As a result of Defendant's breach/negligence, Organic Snack has suffered actual loss(es) and damage, including, but not limited to, the value of the damaged/contaminated Almond Butter and the amounts incurred to replace it.

### COUNT III – LIABILITY PURSUNAT TO 49 U.S.C. § 14706, *ET SEQ.* (IN THE ALTERRNATIVE)

64. Paragraphs 1-48 above are incorporated herein by reference.

65. According to Defendant's own website, a "Bill of Lading (BOL) [is a] legal document that outlines the types of goods being shipped as well as the shipping destination.

The bill of lading is agreed upon by both the shipper and the carrier, traveling with the goods as an invoice." Here, the only agreement was between Organic Snack and Defendant.

66. To the extent that Defendant is deemed a "carrier," Defendant is a carrier providing transportation or service under applicable federal law.

67. Defendant issued the BOL, did not limit its own liability therein or otherwise, and is liable to Organic Snack for actual loss of or injury to the goods.

68. The relevant goods were shipped interstate between California and Pennsylvania.

69. Upon information and belief, the relevant goods were in good condition when loaded into the trailer in California and delivered to Defendant.

70. Before being delivered to Organic Snack, however, the relevant goods were damaged.

71. As a result, Organic Snack has suffered actual loss(es) and damages, including, but not limited to, the value of the damaged/contaminated Almond Butter and the amounts incurred to replace it.

72. Defendant caused the loss or damage to the relevant goods.

73. Organic Snack timely submitted a claim to Defendant for the loss(es)/damage.

74. Defendant is liable to Organic Snack for the actual loss, injury, destruction, and/or contamination of the Almond Butter.

WHEREFORE, Organic Snack demands judgment from ArcBest as follows:

(a) awarding judgment in favor of Organic Snack in an amount to be determined at trial, including, but not limited to, compensatory damages, proximate damages, consequential damages, special damages, punitive damages, and/or other damages, as permitted by law;

(b)     awarding Organic Snack the costs and expenses of this action, including, but not limited to, reasonable attorneys' fees and costs, including, but not limited to, expert fees, in an amount to be determined at trial;

(c)     awarding Organic Snack interest, including, but not limited to prejudgment interest, as appropriate under the law; and

(d)     granting such other and further relief as the Court deems just, proper, and equitable.

**Organic Snack demands a jury trial on all claims and/or issues so triable.**

Respectfully submitted,

Dated: May 8, 2023                              **LEECH TISHMAN FUSCALDO & LAMPL**

                                                   By: /s/ Michael H. Sampson
                                                        Michael H. Sampson
                                                        (msampson@leechtishman.com)
                                                        525 William Penn Place, 28th Floor
                                                        Pittsburgh, Pennsylvania 15219
                                                        412-261-1600 (Phone)
                                                         412-227-5551 (Facsimile)

                                                        *Counsel for Plaintiff Tram Bar Co-Packing LLC dba The Organic Snack Company*